UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| GYPSUM RESOURCES, LLC, | ) | 2:05-cv-0583-RCJ-LRL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNY C. GUINN, in his official capacity as Governor of the State of Nevada and his agents and successors; BRIAN SANDOVAL, in his official capacity as Attorney General of the State of Nevada and his agents and successors; DAVID ROGER, in his official capacity as District Attorney of the County of Clark and his agents and successors; COUNTY OF CLARK, a political subdivision of the State of Nevada; BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLARK; and DOES 1-75, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) | |

This matter comes before the Court on two Motions to Dismiss, filed by the State and County Defendants, respectively, under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (## 16, 17.) The State's motion requests the award of attorneys' fees to the State for defending an action unsupported by law. (# 16.) Also before the Court is Plaintiff's request to file a post-hearing brief. (# 23.) The Court has considered the motions, pleadings on file, and oral argument on behalf of all the parties. For

the reasons discussed below, the Defendants' Motions to Dismiss are granted in part and denied in part. Plaintiff's motion to file a post-hearing brief is granted.

## BACKGROUND

Plaintiff, Gypsum Resources, LLC, a Nevada limited liability company, filed suit for declaratory and injunctive relief under the Civil Rights Act of 1991, 42 U.S.C. § 1983, and the Nevada state constitution against two groups of defendants: (1) the "State Defendants:" (former) Governor Kenny Guinn, and (former) Nevada Attorney General Brian Sandoval[1]; and (2) the "County Defendants:" Clark County District Attorney David Roger, Clark County, the Board of Commissioners of Clark County, and Does 1-75. Plaintiff alleges that a Nevada state law, Senate Bill No. 358 ("S.B. 358"), and Clark County, Nevada Ordinance No. 2914 ("Overlay Ordinance") are unconstitutional and in conflict with federal law. Plaintiff also alleges state constitutional and statutory violations. Plaintiff seeks a declaration that these provisions are unconstitutional and an injunction against their enforcement.

Plaintiff owns real property referred to as the "Gypsum Mine Property," which consists of 2,400 acres that abut and, in some locations includes, portions of the Red Rock Canyon National Conservation Area ("RRCNCA"). The property was mined for gypsum in the 1920s and later and bears the scars of that activity. The land is located in Clark County approximately 12 miles west of the Las Vegas Strip and is zoned as RU, which allows for the development of residential housing of one home on every two acres. James Rhodes, the principal of Gypsum

---

[1] Brian Sandoval is no longer the Attorney General for the State of Nevada. This fact does not dismiss the Attorney General's office from this action. When a public officer who is sued in the officer's official capacity dies, resigns, or otherwise ceases to hold office, the action does not abate and the successor is automatically substituted as Defendant. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d)(1). Accordingly, in this Order, the Court substitutes current Nevada Attorney General Catherine Cortez Masto for Brian Sandoval. Although Kenny Guinn is no longer the Governor of Nevada, the Court need not substitute his name because he is dismissed from this action in this Order.

Resources, LLC, contracted to purchase the property in September 2002, for over $50 million with the intent to develop the property for both residential and commercial uses.  The purchase was finalized in March 2003, and the property was subsequently transferred to the Plaintiff, Gypsum Resources, LLC.

In 2003, the Gypsum Mine Property drew the attention of local, state, and federal lawmakers, who discussed the possibility of acquiring the property to expand the RRCNCA.  However, the Bureau of Land Management ("BLM") did not want to take responsibility for the Gypsum Mine Property due to its damaged condition.  Clark County passed a resolution on May 6, 2003, supporting the fair market acquisition of the lands and transfer of title from the County to BLM.  In the meantime, S.B. 358 was proposed in the Nevada legislature to limit development, subdivision regulation, and rezoning in the area that includes the Gypsum Mine Property.  The Act prohibits local governments (e.g., Clark County) from approving a land use application that would increase the number of residential dwelling units allowed by existing zoning regulations on certain lands adjacent to the RRCNCA, unless a trade of development credits was involved.  The Act also prohibits the County from establishing new non-residential zoning districts on the affected lands or expanding the size of existing non-residential zoning districts..  Ultimately, S.B. 358 was passed by the Nevada legislature and signed into law by Governor Kenny Guinn on May 19, 2003.

Shortly thereafter, on May 21, 2003, the Board of Commissioners of Clark County adopted Ordinance Number 2914, the Overlay Ordinance, which imposes additional design standards and density restrictions for development within and adjacent to the RRCNCA.  Virtually identical to S.B. 358 in many ways, the Overlay Ordinance states that the County will not accept any land use applications that would (1) increase residential densities unless a trade of development credits was involved, (2) establish new non-residential zoning districts, or (3)

1    expand the size of existing non-residential zoning districts on the affected lands, including
2    Plaintiff's property.

3    Plaintiff contends that the local and state officials purposefully "sought to orchestrate a
4    program that would eventually force Rhodes to sell the Gypsum Mine Property to the State at
5    a price that was artificially depressed by a coordinated governmental effort." (Compl. ¶ 24.)
6    Plaintiff believes his property was singled out to create a buffer adjacent to the RRCNCA.
7    Plaintiff believes this is in conflict with the federal law creating the RRCNCA because the
8    federal statute specifically stated that a buffer zone around the conservation area was
9    unnecessary. *See* 16 U.S.C. § 460ccc-9. Thus, the Plaintiff alleges the following five causes of
10   action: (1) Violation of Equal Protection under the Fourteenth Amendment; (2) Denial of Due
11   Process under the Fourteenth Amendment and Nevada Constitution; (3) Taking of Private
12   Property under the Fifth and Fourteenth Amendments and Nevada Constitution; (4) Invalid
13   Special Legislation under the Nevada Constitution (against defendants Guinn, Sandoval, &
14   Roger only); and (5) Declaratory Relief for Usurpation of Local Control and Rendering the
15   County's Master Plan Inconsistent under the Nevada Constitution and state law (against
16   defendants Guinn, Sandoval, & Roger only).

17   Defendants' Motions to Dismiss allege that Plaintiff fails to state a claim for violations
18   of equal protection, due process, and takings. The State's Motion also alleges that Governor
19   Kenny Guinn should be dismissed as an improperly named defendant.

20   In Plaintiff's Opposition to Motions to Dismiss (# 20), Plaintiff agreed that dismissal is
21   appropriate for two matters: (1) Governor Kenny Guinn as a defendant, and (2) the takings claim,
22   which has been foreclosed by the Supreme Court's decision in *Lingle v. Chevron U.S.A. Inc.*, 544
23   U.S. 528 (2005). Accordingly, the Court grants dismissal of former Governor Kenny Guinn as
24   a defendant, and grants dismissal of the takings claim in the Third Cause of Action.

The remaining claims to be addressed are those under the U.S. Constitution for equal protection and due process violations, and the state constitutional and statutory claims. For the reasons that follow, the Court grants the State and County Motions to Dismiss as to the procedural due process claims. The Court denies the Motions as to the equal protection, substantive due process, and state law claims.

**DISCUSSION**

**A.     Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge by the moving party that, on the face of the pleadings, the nonmoving party cannot prevail as a matter of law because the allegations do not assert a cause of action cognizable under federal law. *See, e.g.*, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Dismissal under Rule 12(b)(6) is proper only if it is beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Although courts assume the factual allegations to be true, courts should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

On a motion to dismiss, the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 889 (1990). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss under Rule 12(b)(6). *In re Stac Elecs.*, 89 F.3d at 1403.

**B.     Equal Protection**

Plaintiff asserts that the Defendants misused their governmental powers and purposefully singled its property out for different treatment based upon illegitimate reasons to deflate its property's value and make Plaintiff a "willing seller" to the government, which seeks to acquire its land. Defendants claim, on the other hand, that both S.B. 358 and the County's Overlay Ordinance further legitimate government purposes to preserve the status quo and protect open spaces near the RRCNCA and are rationally related to those purposes. Plaintiff does not assert that it has been denied a fundamental right and does not claim to be part of a suspect class. Rather, Plaintiff asserts that it has been impermissibly singled out and subjected to "arbitrary and malicious" laws that cannot withstand rational scrutiny because the government's stated interests are pretextual.

"Although state action that does not implicate a fundamental right or suspect classification passes constitutional muster under the equal protection clause so long as it bears a rational relation to a legitimate state interest, 'the rational relation test will not sustain conduct by state officials that is malicious, irrational, or plainly arbitrary.'" *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) (internal citations omitted); *see also City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). It is possible to maintain an equal protection claim as a "class of one" where the plaintiff alleges that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in the treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

With respect to S.B. 358, the Nevada Legislature made specific findings that the value of Red Rock Canyon would be diminished, and it would be detrimental to the County and State

"if the scenic views and largely rural character of Red Rock Canyon were to be encroached upon by development that is on a large scale or of inappropriate character." Act of May 19, 2003, ch. 105, 2003 Nev. Stat. 595, 596. Surely, the preservation of open areas is a legitimate state purpose. *See Fry v. City of Hayward*, 701 F. Supp. 179, 182 (N.D. Cal. 1988). The State Defendants point out that the Act is a standstill statute that covers over sixty square miles of property abutting Red Rock Canyon and maintains the status quo by retaining the current levels of zoning.

However, Plaintiff cites to specific portions of legislative history for S.B. 358 that appear to substantiate its claim that the legislature directly targeted its particular property. State Senator Dina Titus, a co-sponsor of S.B. 358, wrote a letter, dated May 6, 2003, to the Clark County Commissioners expressing her support for their resolution advocating the purchase of the Gypsum Mine Property with the intent to subsequently transfer those lands to BLM to be managed as part of the RRCNCA. She stated:

> I am writing in full support of your proposed resolution advocating the acquisition of the former James Hardie gypsum mine lands and subsequent transfer of those lands, once restored, to the BLM to be managed as part of the Red Rock Conservation Area. You are to be commended for your leadership and perseverance on this important issue.
> As you know, I am sponsoring a companion bill in the legislature, SB 358, which would freeze the current rural zoning in the area while your proposed acquisition is being negotiated. This is an important intermediate step for two reasons: First, the current owner is much more likely to be a willing seller if he is denied the ability to more densely develop the land. Second, such limitations will prevent the fair market value from skyrocketing and thus save taxpayer dollars.
> I believe this three-pronged, county-state-federal, collaborative approach to preserving Red Rock is the appropriate way to proceed . . .

(Compl. ¶ 20.)

Senator Titus reiterated her position during her testimony before the relevant state legislative committee. She noted that Clark County hoped to buy the Gypsum Mine property,

and S.B. 358 would lock in the existing zoning. "Locking in existing zoning will more likely make the owner a willing seller, and will keep the fair market value from skyrocketing, which will cost less in public dollars." (Compl. ¶ 22.) Consequently, taking the facts in the light most favorable to the Plaintiff, Plaintiff has stated a cognizable equal protection claim as to S.B. 358 that may entitle it for relief under a "class of one" theory.

With respect to the County's Overlay Ordinance, the stated purposes of the Ordinance include the preservation of open spaces as well as the prevention of overburdening infrastructure needs such as transportation facilities. Plaintiff asserts that, while the Ordinance may be written to include a large area, in reality the overlay district effectively applies only to Plaintiff's property because all other properties are expressly exempted or already developed. Thus, Plaintiff has stated a cognizable claim as to the Overlay Ordinance under a "class of one" theory.

**C.     Due Process**

    **1.     Procedural**

The Constitution prohibits the government from depriving "any person or life, liberty or property without due process of law." U.S. CONST. amend. V & XIV. Plaintiff asserts a procedural due process violation in that it alleges that S.B. 358 and the Overlay Ordinance eliminate "any process by which Plaintiff may apply for zoning relief available to other property owners." (Compl. ¶ 45.) Essentially, Plaintiff bases its due process claim on a deprivation of procedure, not a deprivation an established property right. This reasoning is faulty for several reasons.

The Supreme Court has made clear that "an entitlement to nothing but procedure" is not a sufficient basis for a property interest. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 125 S.Ct. 2796, 2808 (2005). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v.*

*Wakinekona*, 461 U.S. 238, 250 (1983). Thus, Plaintiff does not have any property interest any particular process or procedure it would prefer to utilize in order to develop its property beyond what is currently allowed by existing zoning regulations.

"[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock*, 125 S. Ct. at 2803. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.*, *quoting Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Under Nevada law, the grant or denial of a rezoning request is a discretionary act. *See, e.g., County of Clark v. Doumani*, 114 Nev. 46, 53 (1998); *McKenzie v. Shelly*, 77 Nev. 237, 242 (1961). In order for a property right to vest, "zoning or use approvals must not be subject to further governmental discretionary action affecting the project commencement, and the developer must prove considerable reliance on the approvals granted." *Stratosphere Gaming Corp. v. City of Las Vegas*, 96 P.3d 756, 759-60 (Nev. 2004).

Because the government's land zoning officials retain discretion to grant or deny an application for rezoning, Plaintiff has no protected entitlement to, and thus no property interest in, a change in zoning or the process to obtain a desired change in zoning. At most, Plaintiff would only have an expectancy interest at stake, and the deprivation of such interest is not sufficient to state a procedural due process violation.

Plaintiff's assertion that it no longer has "any process by which [it] may apply for zoning relief" is inaccurate. Both S.B. 358 and the County Overlay Ordinance contain virtually identical language allowing land use applications within the overlay district for cluster development that increases the density on a particular property but does not increase the overall density of residential units in the area. *See* S.B. 358, § 4.3.1(a); Ord. 2914, § 30.48.315. These laws do not

prohibit Plaintiff from developing its property under the current zoning density, applying for cluster development approval, or utilizing development credit trading.  Plaintiff's choice not to utilize these methods for developing its property does not amount to a deprivation of due process.

**2.    Substantive**

Plaintiff alleges a substantive due process violation "because the action of defendants is capricious and motivated by the improper purpose of devaluing the Plaintiff's property." (Compl. ¶ 45.)  In *Armendariz*, the Ninth Circuit explained that "recent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties 'deeply rooted in this Nation's history and tradition.'  Thus, the Fourteenth Amendment protects against a State's interferences with 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education,' as well as with an individual's bodily integrity." 75 F.3d at 1319 (citations omitted).  Plaintiff does not articulate a claim of infringement upon one of these traditionally fundamental interests.  Rather, Plaintiff's claim is based upon economic interests.

Defendants assert that any potential substantive due process claim is preempted by Plaintiff's more specific and explicit takings and equal protection claims.  The Supreme Court has held that, where a particular Constitutional amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [a plaintiff's] claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Armendariz*, 75 F.3d at 1325-26.   The Ninth Circuit, in *Armendariz*, held that the Fifth Amendment preempts substantive due process challenges to land use regulations.  75 F.3d at 1321-1324.  Additionally, in *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 949-50 (9th Cir. 2004), the Court noted that a substantive due process

challenge brought in the context of regulation of real property uses might not be "viable in this circuit."

Defendants further rely upon Justice Scalia's concurrence in *City of Cuyahoga Falls v. Buckeye Community*, 538 U.S. 188 (2003), directing the preemption of a substantive due process claim when equal protection can be used. He stated:

> The judicially created substantive component of the Due Process Clause protects, we have said, certain "fundamental liberty interests]" from deprivation by the government, unless the infringement is narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Freedom from delay in receiving a building permit is not among these "fundamental liberty interests." To the contrary, the Takings Clause allows government *confiscation* of private property so long as it is taken for a public use and just compensation is paid; mere *regulation* of land use need not be "narrowly tailored" to effectuate a "compelling state interest." Those who claim "arbitrary" deprivations of nonfundamental liberty interests must look to the Equal Protection Clause, and *Graham v. Connor*, 490 U.S. 386, 395 (1989), precludes the use of "'substantive due process'" analysis when a more specific constitutional provision governs.

*Id.* at 200-01 (Scalia, J., concurring).

On the other hand, Plaintiff, relying on *Lingle*, argues that the Court is no longer bound by the Ninth Circuit's holding in *Armendariz* and its substantive due process claim is not preempted. The majority in *Lingle* stated: "An inquiry of this nature has some logic in the context of a due process challenge, for a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Porcess Clause. 544 U.S. at 542 (citations omitted). Justice Kennedy, in concurrence, opined that the *Lingle* "decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate [substantive] due process. The failure of a regulation to accomplish a stated or obvious objective would be relevant to that inquiry." *Id.* at 548–549 (Kennedy, J., concurring) (citation omitted); *see also Sinaloa Lake Owners Assn. v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989), *overruled on other grounds by Armendariz*, 75 F.3d 1311 (The

Page 11 of 13

*Sinaloa* court recognized that "the due process clause includes a substantive component which guards against arbitrary and capricious government action . . . .").

Indeed, the Ninth Circuit's recent decisions in *Action Apartment* and *Crown Point* provide new clarity on the issue of preemption. The court in *Crown Point* found that, "it is no longer possible in light of *Lingle* . . . to read *Armendariz* as imposing a blanket obstacle to all substantive due process challenges to land use regulation." 506 F.3d at 856. The court stated:

> In this, *Lingle* pulls the rug out from under our rationale for totally precluding substantive due process claims based on arbitrary or unreasonable conduct. As the Court made clear, there is no specific textual source in the Fifth Amendment [taking clause] for protecting a property owner from conduct that furthers no legitimate purpose. Thus, the *Graham* rationale no longer applies to claims that a municipality's actions were arbitrary and unreasonable, lacking any substantial relation to the public health, safety, or general welfare.

*Id.* at 855.

Similarly, in *Action Apartment*, the court held that the *Lingle* decision effectively overruled the portion of *Squaw Valley* that construed *Armendariz* and *Graham* to create a "blanket prohibition" of any substantive due process claim if it is based on a deprivation of real property. The court stated:

> As we recently recognized, that specific logic cannot survive the Supreme Court's decision in *Lingle*. *Crown Point*, at 855. In *Lingle*, the Court specifically held that an arbitrary and irrational deprivation of real property, although it would no longer constitute a taking, might be "so arbitrary or irrational that it runs afoul of the Due Process clause." 544 U.S. at 542. Given that holding, it must be true that the *Armendariz* line of cases can no longer be understood to create a "blanket prohibition" on all property-related substantive due process claims. *Squaw Valley*, 375 F.3d at 949. After *Lingle*, "the Fifth Amendment does not invariably preempt a claim that land use action lacks any substantial relation to the public health, safety, or general welfare," *Crown Point*, at 856, regardless of anything *Squaw Valley* said to the contrary.

*Action Apartment*, 509 F.3d at 1025. Consequently, Plaintiff has articulated a cognizable substantive due process claim that is not preempted.

### D. State Law Claims

The parties did not address the claims under the Nevada constitution and state law (Fourth and Fifth Causes of Action). Because the Court does not dismiss Plaintiff's substantive due process and equal protection claims, the Court retains supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367.

### CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has articulated cognizable claims for violations of substantive due process and equal protection. The Court retains jurisdiction over the state law claims. The remaining claims are dismissed.

IT IS HEREBY ORDERED that Clark County's Motion to Dismiss (# 17) and the State of Nevada Defendants' Motion to Dismiss (# 16) are GRANTED in part and DENIED in part. Plaintiff's procedural due process and takings claims are hereby DISMISSED. Governor Kenny Guinn is DISMISSED as a defendant.

IT IS FURTHER ORDERED that Nevada Attorney General Catherine Cortez Masto is substituted for Brian Sandoval. All further proceedings shall be captioned accordingly.

IT IS FURTHER ORDERED that the State's request for attorney's fees is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to file a post-hearing brief (# 24) is GRANTED.

DATED: March 27, 2008

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

(eko)